UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| JERRY L. SMITH,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>PAT GLEBE,<br><br>　　　　　　Respondent. | Case No. C13-1813-RSL-JPD<br><br>REPORT AND RECOMMENDATION |

## I.   INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Jerry Smith, who is currently incarcerated at the Stafford Creek Corrections Center in Aberdeen, Washington, proceeds *pro se* in this 28 U.S.C. § 2254 habeas action. Petitioner presents two habeas claims challenging his custody after his 2011 King County conviction for attempted promoting commercial sexual abuse of a minor. Dkt. 9. Petitioner was sentenced to 103.5 months as well as a term of community custody. Dkt. 16, Ex. 1. The Court, having carefully reviewed the petition, all briefs of the parties, and the state court record, concludes that petitioner's federal habeas petition should be DENIED, and this action should be DISMISSED with prejudice.

## II.   DISCUSSION

### A.   Factual Background

The Washington Court of Appeals, on direct appeal, summarized the facts of petitioner's offense as follows:

REPORT AND RECOMMENDATION
PAGE - 1

On June 13, 2010, the Seattle Police Department's gang and vice units were engaged in an operation to identify suspected prostitutes and pimps operating in a small area east of the Space Needle. As part of the operation, Seattle Police Officer Daljit Gill was working undercover. Her assignment was to tell any suspected pimp who attempted to recruit her that she was 17 and working as a prostitute. A wire recorded her conversations with those who contacted her.[1]

That night, a car driven by Anthony Woods pulled alongside Officer Gill. Smith was the passenger. Officer Gill informed the men she was 17 and was working as a prostitute. She displayed a wrapped condom and then put it away, saying that she thought she would not need it at that moment.

Smith asked Officer Gill if she was really 17. She said she would be 18 in four months. Officer Gill told Woods and Smith that she recently moved to Seattle from Yakima to get away from her parents. Smith asked if she already had two dates that night, and how much she charged for intercourse.

Woods also directly asked if she had been working as a prostitute that night. Officer Gill said that she had been. Woods asked how much money she wanted to make. Officer Gill said about $500 for the night. Woods asked her how much money she had already earned. Officer Gill told him about $160. Before she walked away, Woods and Officer Gill exchanged cell phone numbers. Woods told her to call him if she needed help.

Smith called Officer Gill's cell phone twice that night, asking for "17." Officer Gill called Woods shortly thereafter. Woods wanted to know where she was, and said that he and Smith would "protect" her.

Woods, Smith and Officer Gill met again shortly thereafter, and spoke for about 20 minutes. Woods encouraged her to work for him as a prostitute. Woods promised Gill that he would handle her income, that they could use the Internet to get customers, and that he would protect her and help her understand the business. Smith participated in the conversation, alluding to Officer Gill's fictitious age and talking about money and travel:

> [Y]eah, I like a 17 and mean and all about green, you know what
> I'm talking about? ... You know what I mean, for real. Yeah, I can

---

[1] Police previously obtained warrants to record the conversations with suspected pimps. Pretrial, Smith challenged the validity of the warrants. After a suppression hearing, the trial court concluded that the warrants satisfied the requirements of due process and of the Washington State Privacy Act, RCW 9.73.030. Smith has not challenged those rulings on appeal. [Footnote by Washington Court of Appeals.]

REPORT AND RECOMMENDATION
PAGE - 2

see, I can see it in Vegas living outrageous and we can go to the Bay Area, okay, you know what I'm talking about?[2]

The conversation ended when a van pulled up with three men inside.

Woods engaged in a loud conversation with the men, who had begun to speak with Officer Gill. Officer Gill became uneasy during this confrontation and signaled her police colleagues for assistance. A uniformed police officer arrived and, to maintain Officer Gill's ruse, announced he was arresting her because she had a juvenile runaway warrant. Woods, meanwhile, drove off.

Smith remained behind. Smith told the uniformed officer that Officer Gill was his girlfriend. The officer checked Smith's identification card and then released him. The officer handcuffed Officer Gill and escorted her out of the area. Officer Gill had no more contact with Woods or Smith that night.

Eight days later, Officer Gill contacted Woods and Smith and attempted to draw them to her so they could be arrested. She told them she needed a ride after being released from the juvenile detention center. Officer Gill first called Woods, who said he would send someone to pick her up. Woods also gave Officer Gill Smith's telephone number. This touched off a series of phone conversations between Officer Gill, Woods, and Smith.

In a conversation Smith was not privy to, Woods instructed Officer Gill to give Smith all her money, and to work with Smith until Woods could arrange a flight for her to Las Vegas. Woods also told Gill what to charge customers for various sex acts.

When Officer Gill contacted Smith, he told her that he would pick her up at a convenience store near the detention center. He asked if there were any police nearby. Officer Gill walked to the meeting place, remaining in phone contact with Smith most of the way. She arrived at the meeting place first. When Smith arrived in his truck, he appeared nervous. Officer Gill walked up to the truck, confirmed Smith was the driver, and gave a signal to the arrest team. The officers took Smith into custody.[3]

---

[2] The Washington Court of Appeals' footnote, which was a citation to the record, is omitted.

[3] Continuing the ruse and attempting to ensnare Woods, Gill later called Woods and told him Smith never came for her. Woods told her he would send his niece for her. The police were not able to locate or arrest Woods. [Footnote by Washington Court of Appeals.]

REPORT AND RECOMMENDATION
PAGE - 3

The State subsequently charged Smith with one count of attempted promoting commercial sexual abuse of a minor in violation of RCW 9.68A.101.[4] Following a jury trial, he was convicted as charged. The trial court imposed 103.5 months of total incarceration.

Dkt. 16, Ex. 2 at 1-4.  *See also State v. Smith*, 174 Wash.App. 1006, 2013 WL 950935 at *1-2 (March 11, 2013).

B. Procedural History

1. *Direct Appeal*

Petitioner appealed his conviction to the Washington State Court of Appeals by filing a brief with the assistance of counsel as well as a *pro se* supplemental brief.  Dkt. 16, Ex. 3, 5.  The Court of Appeals affirmed the judgment and sentence.  *Id*., Ex. 2.  Petitioner filed a motion for discretionary review with the Washington Supreme Court, raising the following two issues:

(1) Where the prosecution fails to prove specific intent, and that the criminal defendant has taken a substantial step toward the commission of the crime charged, does this warrant dismissal of the charges with prejudice?

(2) Can a criminal defendant be arrested for merely parking his vehicle at a gas station?

*Id*., Ex. 7 at 1-2.

The Washington Supreme Court denied review on August 5, 2013.  *Id*., Ex. 8.  The Court of Appeals issued the mandate on September 18, 2013.  *Id*., Ex. 9.

2. *Personal Restraint Petition*

While his direct appeal was pending, petitioner filed a motion to vacate judgment and sentence with the King County Superior Court.  *Id*., Ex. 10.  The Superior Court transferred the

---

[4] RCW 9.68A.101 provides, "A person is guilty of promoting commercial sexual abuse of a minor if he or she knowingly advances commercial sexual abuse or a sexually explicit act of a minor or profits from a minor engaged in sexual conduct or a sexually explicit act." Under RCW 9A.28.020, "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." [Footnote by Washington Court of Appeals.]

REPORT AND RECOMMENDATION
PAGE - 4

motion to the Court of Appeals as a personal restraint petition ("PRP"). *Id.*, Ex. 11. The state court dismissed the petition on April 16, 2013, for lack of payment and/or lack of statement of finances, and issued a certificate of finality on May 24, 2013. *Id.*, Exs.12-13.

        3.    *Federal Habeas Petition*

On October 30, 2013, petitioner filed the instant habeas petition, which presented the following three claims for relief:

> (1) Based on the evidence in the record, no rational trier of fact could conclude beyond a reasonable doubt that Jerry L. Smith intended to advance or profit from any exploitation of the officer posing as a 17 year old minor because petitioner did not take a substantial step in that direction.
>
> (2) Smith challenges the prosecutor's closing argument. Specific portions are herein incorporated through arguments asserted to the Washington Courts.
>
> (3) Jerry L. Smith submits that police lacked probable cause to arrest him because the facts known to the police at the time of his arrest do not support a reasonable inference that he was engaged in any crime.

Dkt. 9 at 5-8.

On December 12, 2013, respondents filed an Answer to the petition arguing that petitioner's second claim, alleging prosecutorial misconduct, was unexhausted because petitioner raised it to the Court of Appeals but did not raise it in the Washington Supreme Court. Dkt. 15 at 5-6. Respondent asserted that because less than one year had passed since the Court of Appeals issued its mandate, petitioner may still have an opportunity to return to the Washington courts to exhaust this claim through a collateral challenge. *Id.*

On December 31, 2013, petitioner filed a motion to strike his unexhausted claim. Dkt. 18. Specifically, petitioner conceded that his prosecutorial misconduct claim had not been presented to the Washington Supreme Court, but rather than exhaust this claim he opted to "waive[] his right to the stay and abey procedure" and "request[ed] [that] this Court delete his

unexhausted claim by granting this motion to strike the unexhausted claim." *Id*. at 1-2. The Court granted petitioner's motion on January 22, 2014, and directed the respondent to file a supplemental brief addressing the merits of petitioner's remaining claims which were properly exhausted. Dkt. 20.

Respondent filed its supplemental Answer on February 5, 2014, Dkt. 21, and petitioner filed his reply on February 12, 2014. Dkt. 22. Accordingly, the briefing is complete, and this case is ripe for review.

C. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"Clearly established federal law," for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

    D.    <u>Petitioner's Federal Habeas Claims Lack Merit</u>

        1.    *The Evidence Supporting Petitioner's Convictions is Constitutionally Sufficient*

Petitioner's first ground for relief argues that the evidence presented at his trial was insufficient to support his convictions. Dkt. 9 at 5. Specifically, petitioner argues that "based on the evidence in the record, no rational trier of fact could conclude beyond a reasonable doubt that [petitioner] intended to advice or profit from any exploitation of

REPORT AND RECOMMENDATION
PAGE - 7

the officer posing as a 17 year old minor because petitioner did not take a substantial step in that direction." *Id*.

The Constitution forbids the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 361-64 (1970). In reviewing a claim of insufficiency of the evidence to support a conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *See Gordon v. Duran,* 895 F.2d 610, 612 (9th Cir.1990). Review is sharply limited, and the federal court owes great deference to the trier of fact. *Wright v. West,* 505 U.S. 277, 296–97 (1992). The *Jackson* standard requires the reviewing court to keep in mind the requirements of state law: "the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson v. Virginia,* 443 U.S. 307, 324 (1979). Evidence is sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. For example, the jury is entitled to believe the State's evidence and to disbelieve the defense's evidence. *Wright*, 505 U.S. at 296. On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1 (2011) (per curiam)).

Under Washington law, "[a] person is guilty of promoting commercial sexual abuse of a minor if he or she knowingly advances commercial sexual abuse or a sexually explicit act or a minor or profits from a minor engaged in sexual conduct or a sexually explicit act." RCW 9.68A.101. "A person is guilty of an attempt to commit a crime if, with intent to commit a

REPORT AND RECOMMENDATION
PAGE - 8

specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020.

The Court of Appeals denied petitioner's claim, finding sufficient evidence to support the jury's finding of the essential elements of the crime beyond a reasonable doubt. For example, in denying petitioner's prosecutorial misconduct claim, the court explained that the record contained an abundance of evidence of petitioner's guilt:

> There was an abundance of evidence in this case, including the multiple recordings of Smith's and Wood's conversations with Officer Gill, Smith's own testimony about his actions, which the jury was entitled to weigh for or against him, and the testimony of Officer Gill and the other the investigating officers. . . .

Dkt. 16, Ex. 2 at 9.

The Court of Appeals also directly addressed, albeit briefly, petitioner's argument that there was insufficient evidence to support his conviction:

> Smith's arguments in his statement of additional grounds for review, that there was no probable cause supporting his arrest and insufficient evidence to support his conviction, are without merit. The record reveals that ample evidence supported both a finding of probable cause to arrest him and the jury's verdict as to each element of the charged offense.

Dkt. 16, Ex. 2 at 9-10.

The Court finds that a rational jury could have found that petitioner performed an act which was a substantial step toward the commission of the crime of attempted promotion of commercial sexual abuse of a minor beyond a reasonable doubt. The evidence at trial established that petitioner was riding as a passenger in a car driven by Anthony Woods, when they stopped briefly to engage Officer Gill (who was posing as a prostitute) in conversation. *Id.*, Ex. 14 at 31. During their first interaction, Officer Gill announced that she was 17 years old. *Id.* After Woods and petitioner drove around the block and returned to Officer Gill,

REPORT AND RECOMMENDATION
PAGE - 9

petitioner directly asked Officer Gill if she was really 17 and when she turned 18. *Id*. at 33. Petitioner also asked if she already had two dates that night, and how much she charged for intercourse. *Id*., Ex. 2 at 2.

By contrast, petitioner testified during the trial that he was "just along for the ride" and that he was actually interested in Officer Gill's safety. Dkt. 16, Ex. 15 at 63. Petitioner testified that he advised Officer Gill that "it was dangerous out there," and what he meant was that she "should go home and get from down here" and he "was just trying to give a person some advice." *Id*. at 64. When a patrol officer approached petitioner and Officer Gill, however, petitioner did not express any concern for her safety, but instead told the patrol officer that Officer Gill was his girlfriend. *Id*., Ex. 2 at 3. He advised Officer Gill, "You are with me." *Id.,* Ex. 14 at 50. When Officer Gill told Smith that she had a warrant for being a juvenile runaway, he said, "Okay, just stay calm." *Id*. at 54.

Petitioner also testified that he was naïve to the fact that Officer Gill meant that she was working as prostitute when she advised them she was "working," because he did not actually observe her "doing prostitution acts." *Id*., Ex. 15 at 228. He stated that he "hadn't been downtown in a long time. I don't know – the categories of lingo between two people are. But working could be, I came – I work in a club down here, a restaurant." *Id*., Ex. 15 at 220. However, Officer Gill had also testified previously that she told petitioner she was "working" while simultaneously tucking a wrapped condom into her bra strap, thereby clearly communicating that she meant she was working as a prostitute. *Id*., Ex. 14 at 36-37. Petitioner also advised Officer Gill that "You better use protection out here," suggesting that he had understood what she meant. *Id*., Ex. 15 at 224.

REPORT AND RECOMMENDATION
PAGE - 10

Petitioner was present throughout Woods' attempted solicitation of Officer Gill, such as his promise to handle her income, that they could use the internet to get customers, and that he would protect her. *Id*., Ex. 2 at 3. Petitioner was also an active participant in this conversation, suggesting to Officer Gill that the internet "might make it easier for you." *Id.,* Ex. 16 at 55. He also commented that he "like[s] a 17 and mean and all about green, you know what I'm talking about? . . . I can see it in Vegas living outrageous and we can go to the Bay Area, okay, you know what I'm talking about?" *Id*., Ex. 2 at 3.

Similarly, after Officer Gill asked Woods and petitioner what was going to happen to her money, petitioner commented, "Sharing is the next best thing." *Id*., Ex. 16 at 56. At trial, petitioner testified that in making this comment he had meant "Sharing is the next best thing to caring. That's it. It was just a slogan, a word, whatever," and he was not trying to recruit her to work as a prostitute. *Id.* at 57. Petitioner also acknowledged at trial, however, that he had been aware that Woods was trying to recruit Officer Gill and act as her pimp. *Id.* at 57-58.

Eight days after meeting Officer Gill, petitioner drove to pick her up by himself, believing that she had just been released from juvenile detention. *Id*., Ex. 2 at 3. While en route to her location, petitioner asked Officer Gill on the phone if there were any police nearby. *Id*. at 4. In a conversation petitioner was not privy to, Woods had instructed Officer Gill to give petitioner all her money and work with him until he could arrange a flight for her to Las Vegas. *Id*. The jury could have reasonably inferred that Woods and petitioner had also discussed this arrangement, and that petitioner had agreed to "manage" Officer Gill during Woods' absence. When petitioner arrived to pick up Officer Gill, he was promptly arrested. *Id*.

REPORT AND RECOMMENDATION
PAGE - 11

Based on this evidence, a rational trier of fact could believe that petitioner was attempting to aid in promoting Gill's prostitution, and that he believed she was 17 years old when doing so. Accordingly, the Court of Appeals' denial of petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law.

2.      *Petitioner's Fourth Amendment Claim Is Not Cognizable*

Petitioner argues that the "police lacked probable cause to arrest him because the facts known to the police at the time of his arrest do not support a reasonable inference that he was engaged in any crime." Dkt. 9 at 8. Respondent argues that petitioner's illegal arrest claim is not cognizable in this habeas proceeding, because even if petitioner could establish a violation of his Fourth Amendment rights, petitioner's claim is barred by the U.S. Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 482 (1976). Dkt. 21 at 8.

The Fourth Amendment assures the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The exclusionary rule is designed to effectuate these rights. *Powell*, 428 U.S. at 482. However, the exclusionary rule itself is not a personal constitutional right. *Id.* at 486. The rule is a judicially created remedial device designed to deter future misconduct by removing the incentive to disregard the Fourth Amendment. *Id.* at 484. Evidence obtained in violation of the Fourth Amendment is excluded in the hope that the frequency of future violations will decrease. *Id.* at 492.

As with any remedial device, application of the exclusionary rule is restricted to those areas where its remedial objectives are thought to be most efficaciously served. *United States v. Calandra,* 414 U.S. 338, 348 (1974). In *Powell*, the U.S. Supreme Court

REPORT AND RECOMMENDATION
PAGE - 12

recognized that implementation of the exclusionary rule at trial and on direct appeal discourages law enforcement officials from violating the Fourth Amendment. The Supreme Court further observed, however, that "the additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs." *Powell*, 428 U.S. at 493. As a result, the Supreme Court held that "[w]here the State has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 484.

The Ninth Circuit has held that if the state's judicial procedure affords the criminal defendant an "opportunity" for a full and fair litigation of a Fourth Amendment claim, *Powell* precludes the petitioner from seeking federal habeas corpus review, regardless of whether the petitioner availed himself of that opportunity. *See Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990) ("Whether or not Gordon did in fact litigate this fourth amendment claim in state court, he did have the opportunity to do so . . . Given that Gordon had an opportunity in state court for 'full and fair litigation' of his fourth amendment claim, the Constitution does not require that Gordon be granted habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."); *Caver v. Alabama*, 577 F.2d 1188, 1192 (9th Cir. 1978) ("An 'opportunity for full and fair litigation' means just that: an opportunity. If a state provides the processes whereby a defendant can obtain a full and fair litigation of a Fourth Amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.").

REPORT AND RECOMMENDATION
PAGE - 13

The Washington Superior Court Criminal Rules provide an opportunity for a full and fair litigation of claimants' Fourth Amendment claims.  *See* Washington State Criminal Procedure Rule CrR 3.6 (Suppression Hearings- Duty of Court).[5]  Furthermore, the Court of Appeals briefly addressed petitioner's Fourth Amendment claim in its written decision, and concluded that his arrest did not run afoul of the Fourth Amendment.  Specifically, the court found that "Smith's arguments in his statement of additional grounds for review, that there was no probable cause supporting his arrest . . . are without merit.  The record reveals that ample evidence supported . . . a finding of probable cause to arrest him[.]"  Dkt. 16, Ex. 2 at 10.

Thus, after reviewing the state court record, the Court finds that petitioner was provided a full and fair opportunity to litigate his Fourth Amendment claim and challenge the legality of his arrest.  The state courts considered the issue, and rejected petitioner's arguments.  Because petitioner was given a full and fair opportunity to litigate his Fourth Amendment claim at the state court level, his Fourth Amendment habeas claim is not cognizable in this habeas proceeding.  Accordingly, the state courts' adjudication of this issue was neither contrary to, nor an unreasonable application of, clearly established federal law.

### III.   CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability

---

[5] For example, as the Court of Appeals noted, the trial court held a pretrial suppression hearing with respect to petitioner's Fourth Amendment challenge to the legality of wiretaps used to record conversations with suspected pimps in this case.  Following the suppression hearing, the trial court concluded that the warrants authorizing the wiretaps satisfied the requirements of due process and of the Washington State Privacy Act, RCW 9.73.030.  It is therefore evident that petitioner was provided an opportunity to litigate his Fourth Amendment claims at the trial court level.

REPORT AND RECOMMENDATION
PAGE - 14

from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 327 (2003). Based on a thorough review of the record and analysis of the law in this case, the Court recommends that petitioner be denied a certificate of appealability with respect to the grounds raised in his petition.

### IV.   CONCLUSION

For the foregoing reasons, the Court recommends that petitioner's habeas petition, Dkt. 9, be DENIED and this case be DISMISSED with prejudice. The Court further recommends that a certificate of appealability be denied with respect to petitioner's alleged grounds for relief. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21)** days of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 25, 2014**.

DATED this 28th day of March, 2014.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge